UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
GREENBELT DIVISION

|                                              |   |                                          |
|----------------------------------------------|---|------------------------------------------|
| ROBERT HOROWITZ, *et al.*                    | * |                                          |
|                                              | * |                                          |
| Plaintiffs                                   | * |                                          |
|                                              | * |                                          |
| v.                                           |   | Civil Action No.:  8:14-cv-03698-DKC     |
|                                              | * |                                          |
| CONTINENTAL CASUALTY COMPANY                 |   |                                          |
| D/B/A CNA, *et al.*,                         | * |                                          |
|                                              | * |                                          |
| Defendants                                   | * |                                          |

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT ECCLESTON AND WOLF, P.C.'S MOTION TO DISMISS FIRST AMENDED COMPLAINT

Defendant, Eccleston and Wolf, P.C., by its attorneys, Shirlie Norris Lake, Ashley L. Marucci and Eccleston and Wolf, P.C., files this Memorandum of Law in support of its Motion to Dismiss Plaintiffs' Amended Complaint.

## I.      INTRODUCTION

The Amended Complaint filed by Plaintiffs, Robert and Cathy Horowitz, against Eccleston and Wolf, P.C. ("E&W"), among other Defendants, arises from a series of underlying connected cases involving some of the other parties to this action.  In the course of those underlying cases, the Circuit Court for Montgomery County, Maryland issued rulings that are dispositive of the claims the Horowitzes seek to pursue in the instant case, the primary factual basis of which is an allegation that the Settlement Agreement between the Horowitzes and The Zipin Law Firm is illegal and unenforceable.  Beyond that fact, the Horowitzes have not, and cannot, state a claim against E&W for which they are entitled to relief.  Thus, dismissal of the

Amended Complaint, with prejudice and without leave to further amend, is warranted pursuant to Federal Rule of Civil Procedure 12(b)(6).

## II.   BACKGROUND

This case arises from a series of complex underlying facts and related cases that involve some of the same parties to the case at bar.  To place the Horowitzes' claims and E&W's request for sanctions in context, the background litigation is discussed herein.[1]

### Horowitz I and II

On or about June 9, 2009, the McLean School of Maryland, Inc. ("the School") filed suit against the Horowitzes in the Circuit Court for Montgomery County to recover unpaid tuition for their son, in a case captioned *McLean School of Maryland, Inc. v. Horowitz, et al.*, Circuit Court for Montgomery County, Case No. 314799V (hereinafter referred to as "*Horowitz I*").  Exhibit 1, *Horowitz I* Docket Entries, at p. 1.  In the course of that action, the Horowitzes retained The Zipin Law Firm, LLC ("ZLF") to represent them.  *Id.* at pp. 1-2.  In the same case, the Horowitzes filed a Counter-Complaint against the School, seeking to recover economic and emotional distress damages arising from the School's alleged unfulfilled promise to allow Mrs. Horowitz to pay her son's tuition with pre-tax dollars she earned through her employment with the School.  *Id.* at Docket No. 9.  Thereafter, the School, as a Counter-Defendant, filed a Third Party Complaint against Gelman, Rosenberg & Freedman ("GRF"), the accounting firm used by the School in connection with developing certain policies, such as those relating to payment of tuition by School employees.  *Id.* at Docket No. 125.  The Horowitzes filed a Cross-Claim

---

[1] A Court may take judicial notice of docket entries, pleadings and papers in other cases without converting a motion to dismiss into a motion for summary judgment.  *See Papasan v. Allain*, 478 U.S. 265, 268 n.1 (1986) (explaining that the Court may take notice of matters of public record such as pleadings); *Hall v. Virginia*, 385 F.3d 421, 424 (4th Cir. 2004); *Mack v. South Bay Beer Distributors, Inc*. 798 F.2d 1279, 1282 (9th Cir. 1986) (indicating that "on a motion to dismiss a court may properly look beyond the complaint to matters of public record and doing so does not convert a Rule 12(b)(6) motion to one for summary judgment").

against GRF.  *Id.* at Docket No. 138.  The Circuit Court granted the School's Motion for Summary Judgment on its claim for unpaid tuition, and awarded Judgment in the amount of $42,431.10, plus interest, late fees and attorney's fees in favor of the School and against the Horowitzes.  *Id*. at Docket No. 25. The Court of Special Appeals affirmed the trial Court's ruling, and the Court of Appeals denied the Horowitzes' Petition for Writ of Certiorari.  *Id*. at Docket Nos. 207-08.

In *Horowitz I*, the parties filed a Joint Line of Dismissal without Prejudice as to the Counter-Complaint, Third Party Complaint and Cross-Claim.  *Id.* at Docket Nos. 146-150.  Accordingly, those claims were severed from the case and alleged in a separately filed action by the Horowitzes against the School and GRF, in a case captioned *Horowitz, et al. v. McLean School of Maryland, Inc., et al*., Circuit Court for Montgomery County, Case No. 336936V (hereinafter referred to as "*Horowitz II*").   Exhibit 2, *Horowitz II* Docket Entries.   The Horowitzes were also represented by ZLF in *Horowitz II*.  *Id.* at Docket No. 34.   At the conclusion of a five-day jury trial, Judgment was entered against the School and in favor of the Horowitzes in the amount of $12,500 for their claim for alleged promissory estoppel.  *Id.* at Docket No. 109.  Judgment was entered in favor of the School on all other claims alleged by the Horowitzes.  *Id.*  In addition, Judgment was entered in favor of GRF and against the School in the Cross-Claim.  *Id.*  After the entry of final Judgment, ZLF withdrew from representation of the Horowitzes.  *Id.* at Docket No. 115.  Ultimately, the Court of Special Appeals affirmed the rulings of the trial Court in *Horowitz II*, and the Court of Appeals denied the Horowitzes' Petition for Writ of Certiorari.  *Id.* at Docket Nos. 135-36.

**Horowitz Legal Malpractice Case v. ZLF and ZLF Enforcement Case**

While the appeal in *Horowitz II* was pending, the Horowitzes filed suit against ZLF, Philip Zipin, Esquire and two (2) associates at the firm, in a case captioned, *Horowitz, et al. v. Zipin Law Firm, LLC, et al.*, Circuit Court for Montgomery County, Case No. 369393V (hereinafter referred to as the "Horowitz legal malpractice case"). Exhibit 3, Horowitz legal malpractice case Docket Entries. In that action, the Horowitzes were initially represented by the law firms of Selzer, Guvich, Rabin, Wertheimer, Polott & Obecny, P.C. (the "Selzer firm") and Bregman, Berbert, Schwartz & Gilday, LLC (the "Bregman firm"). The Complaint in the Horowitz legal malpractice case alleged various causes of action for legal malpractice and related tortious activity. The Defendants in that case were insured by Continental Casualty Company ("Continental") and represented by E&W. (*See* Amended Compl. at ¶¶ 7, 15).

During the course of the Horowitz legal malpractice case, Mr. Zipin, himself, pursued a Counter-Complaint on behalf of ZLF against the Horowitzes in an effort to recover unpaid legal fees and costs incurred in ZLF's representation of the Horowitzes in *Horowitz I* and *Horowitz II* (hereinafter referred to as the "ZLF fee Counter-Complaint"). *See* Exh. 3. Mr. Zipin, alone, handled the ZLF fee Counter-Complaint by entering his appearance on behalf of ZLF, filing all papers and pleadings in connection with the Counter-Complaint and pursuing discovery independently on behalf of ZLF. *Id.* at p. 1; Exhibit 4, Zipin Law Firm Counter-Complaint against Horowitzes, at pp. 1, 7. E&W did not actively engage in any efforts to pursue the ZLF fee Counter-Complaint; rather, E&W's efforts were limited to representation of ZLF and the individually named Defendants in the Horowitz legal malpractice case. Exh. 3 at pp. 1-3, Exh. 4 at pp. 1, 7.

Following mediation on November 12, 2013 with the Honorable Irma S. Raker, retired Judge of the Court of Appeals, the parties reached a settlement of the Horowitz legal malpractice case and the ZLF fee Counter-Complaint, the terms of which were memorialized in a Settlement Agreement and Release (the "Agreement").  Exhibit 5, Settlement Agreement and Release.[2]  The Agreement was finalized no later than November 20, 2013, the date on which the final version was provided to the Horowitzes' attorneys.  The Horowitzes signed the Settlement Agreement on November 26, 2013.  *Id.* at p. 7. The Agreement was fully executed by all parties as of December 4, 2013.  *Id.* at p. 10.

The settlement of the Horowitz legal malpractice case provided for payment by Continental, on behalf of the Defendants, in the amount of $125,000 to resolve the legal malpractice claims against Zipin, his law firm and the other attorneys.  Exh. 5 at p. 6.  The settlement also required payment by the Horowitzes to ZLF in the amount of $62,500 to resolve the ZLF Counter-Complaint for unpaid legal fees.  *Id.*  The Agreement specified that the consideration from the Horowitzes to ZLF was to be paid no later than 15 business days following the receipt and deposit by the Horowitzes of the $125,000 settlement check from Continental on behalf of the Defendants.  *Id.*  After executing the Agreement, the parties filed a Stipulation of Dismissal with Prejudice of both the malpractice Complaint and the fee Counter-Complaint.  Exh. 3 at Docket No. 260.  After receiving and depositing the $125,000 settlement check from Continental, the Horowitzes refused to pay the $62,500 owed to ZLF pursuant to the terms of the Agreement.  (Amended Compl. ¶ 61).

---

[2] A Court may take judicial notice of documents that are integral to, and relied upon, in the Complaint without converting a motion to dismiss into a motion for summary judgment. *See Philips v. Pitt Cnty. Mem. Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009) (explaining that the Court may properly consider documents attached to a motion "so long as they are integral to the complaint and authentic"); *Am. Chiropractic Ass'n v. Trigon Healthcare, Inc.*, 367 F.3d 212, 234 (4th Cir. 2004); *Roberson v. Ginnie Mae Remic Trust*, 973 F. Supp.2d 585, 587 (D. Md. 2013).  Here, the Settlement Agreement and Release is integral to, and referenced in, the Amended Complaint, but not attached as an Exhibit.  Additionally, the Settlement Agreement and Release is a matter of public record in the ZLF enforcement case discussed infra.  *See* note 1.

In light of the Horowitzes' breach of the Agreement, ZLF, as Defendant and Counter-Plaintiff, filed a Motion to Re-Open the Case, a Motion to Seal and a Motion for Sanctions against the Horowitzes.  Exh. 3 at Docket Nos. 261-263.  Those papers indicated that ZLF intended to file a Motion to Enforce the Settlement Agreement.  The Circuit Court for Montgomery County subsequently issued an Order granting ZLF's Motion to Seal.  *Id.* at Docket No. 270.  Prior to the Court issuing a ruling on the remaining Motions, E&W withdrew its appearance as counsel for the Defendants in the legal malpractice Complaint.  *Id.* at Docket No. 278.  Thereafter, the Court denied ZLF's Motion to Re-Open the Case and Motion for Sanctions, indicating that relief must be pursued in a separate action.  *Id.* at Docket Nos. 282-83.

Accordingly, ZLF, through Mr. Zipin as its counsel, filed a separate action against the Horowitzes, seeking to enforce the Agreement, in a case captioned, *Zipin Law Firm, LLC v. Horowitz, et al.*, Circuit Court for Montgomery County, Case No. 391819V (hereinafter referred to as the "ZLF enforcement case").  Exhibit 6, ZLF enforcement case Docket Entries, at p. 1.  In the ZLF enforcement case, the Horowitzes were, and continue to be, represented by John Lopatto, their current counsel in this case.  *Id.*  In support of its claim to enforce the Settlement Agreement, ZLF filed a Motion for Summary Judgment (*Id.* at Docket No. 6), which the Horowitzes did not oppose.  *See generally, id.*  Thereafter, the Horowitzes filed a Motion to Dismiss the Complaint, on the grounds of *res judicata*, judicial estoppel and lack of personal jurisdiction relating to issues of proper service.  *See id.* at Docket No. 26.  ZLF filed an Opposition to the Motion to Dismiss, to which the Horowitzes filed a Reply.  *Id.* at Docket No. 35.  Following a hearing on November 25, 2014,[3] the Court granted ZLF's Motion for Summary Judgment.  Exh. 6 at Docket No. 39.  In accordance with the terms of the Agreement, the Court

---

[3] During the hearing on ZLF's Motion for Summary Judgment, the Horowitzes, appearing *pro se*, raised many of the same arguments alleged in this case, including the alleged illegality and unenforceability of the Settlement Agreement.

awarded Judgment in favor of ZLF and against the Horowitzes in the amount of $65,781.25, the amount due ZLF under the Agreement plus interest. *Id.* In light of the Court's Order granting Summary Judgment in favor of ZLF, the Horowitzes' Motion to Dismiss was rendered moot. *See id.* at Docket No. 38.

The Horowitzes filed a Motion to Alter or Amend the Judgment, arguing that, based upon their pending Motion to Dismiss, on which the Court did not issue a ruling, ZLF's Motion for Summary Judgment was not ripe for a ruling, and the Court should not have issued an Order granting Summary Judgment in favor of ZLF. Exh. 6 at Docket No. 42. ZLF filed an Opposition to the Motion to Alter or Amend. *Id.* at Docket No. 44. Thereafter, the Court held a hearing on the Motion on March 30, 2015. *Id.* at Docket No. 48. Following the hearing, the Court granted, in part, the Horowitzes' Motion to Alter or Amend and vacated its Order granting ZLF's Motion for Summary Judgment. *Id.* at Docket Nos. 51-52. The Court's Orders were based upon the rationale that the Horowitzes' Motion to Dismiss had not been fully litigated, with the opportunity for a hearing, before the Court issued a ruling on ZLF's Motion for Summary Judgment. The Court indicated that it will set a hearing on the Motion to Dismiss. *See id.* at Docket No. 51.

### Selzer Fee Case/ Horowitz Counter-Complaint

As discussed herein, in the Horowitz legal malpractice case and the ZLF fee Counter-Complaint, the Horowitzes were represented by the Selzer firm and the Bregman firm. After the Horowitzes failed to pay those law firms for their legal services in connection with those cases, the Selzer firm filed suit against the Horowitzes to recover its unpaid legal fees, in a case captioned, *Selzer, Gurvich, Rabin, Wertheimer, Polott & Obecny, P.C. v. Horowitz, et al.*, Circuit Court for Montgomery County, Case No. 387555V (hereinafter referred to as the "Selzer fee

case"). Exhibit 7, Selzer fee case Docket Entries.  In that action, the Horowitzes filed a Counter-Complaint against the Selzer firm and a Third Party Complaint against the Bregman firm, asserting causes of action for alleged legal malpractice (hereinafter referred to as the "Horowitz legal malpractice Counter-Complaint").  *Id.* at Docket No. 17.  In the Horowitz legal malpractice Counter-Complaint, the Horowitzes alleged that the Settlement Agreement was illegal and unenforceable, and that the Agreement constituted an illegal rebate that was prohibited by § 27-212 of the Insurance Article of the Maryland Code.  In the Selzer fee claim and the Horowitz legal malpractice Counter-Complaint, the Horowitzes were, and continue to be, represented by John Lopatto, their current counsel in this case.  *Id.* at pp. 1-2.  All parties filed Cross-Motions for Summary Judgment on the various causes of action alleged, and the Court held a hearing on the Motions on October 29, 2014.  *Id.* at Docket Nos. 27, 28, 36, 44, 53, 84-88.

After the parties had an opportunity to present their arguments during the hearing, Judge Michael D. Mason granted the Selzer firm's Motion for Summary Judgment on its claim for unpaid legal fees, and awarded $87,727.76 in damages in favor of the Selzer firm and against the Horowitzes.  Exh. 7 at Docket Nos. 102, 104.  The separate Motions for Summary Judgment filed by the Selzer firm and the Bregman firm on the claims for legal malpractice alleged by the Horowitzes in the Horowitz legal malpractice Counter-Complaint were also granted by Judge Mason.  *Id.* at Docket Nos. 99-100.  At the same time, the Motions for Summary Judgment filed by the Horowitzes, requesting Judgment on the Selzer fee claim and the Horowitz legal malpractice Counter-Complaint, were denied and Judgment on all Motions was entered on November 3, 2014.  *Id.* at Docket Nos. 99-105.  Subsequently, the Horowitzes filed a Motion to Alter or Amend the Judgments, and a Supplement to that Motion, which the Court denied on December 24, 2014.  *Id.* at Docket Nos. 107, 114, 124.  They then noted an appeal on January

21, 2015.  *Id.* at Docket No. 133.  The parties in the Selzer fee case and the Horowitz legal malpractice Counter-Complaint have also engaged, and continue to engage, in post-Judgment litigation relating to the Selzer firm's attempt to collect on the Judgment entered in its favor.  *See id.* at Docket Nos. 108-173.

In his Ruling issued on the record in open Court, Judge Mason held that the Horowitzes could not retain the benefit of the Settlement Agreement, in the form of $125,000 paid by Continental, while, also, claiming that the Agreement is illegal or unenforceable.  *See* Exhibit 8, Transcript of Hearing before Judge Mason in the Circuit Court for Montgomery County, at p. 58. Accordingly, Judge Mason ruled that the Agreement is enforceable, and that the Horowitzes' actions constituted a waiver of any arguments to the contrary.  *See id.* at pp. 58-59.  In rejecting the Horowitzes' argument that the Agreement involved an "illegal rebate," Judge Mason ruled that the purpose of the illegal rebate provision of the Maryland Insurance Code upon which the Horowitzes relied is to eliminate discrimination in insurance rates among similar classes of insureds.  *See id.* at pp. 62-63.  Because the purpose underlying that section of the Insurance Code was not implicated by the allegations set forth in the Horowitz Counter-Complaint, Judge Mason held that "there was nothing about the Agreement that the Court finds is illegal within the insurance commission statute."  *Id.* at p. 63.

### Maryland Insurance Administration Proceedings

On or about July 30, 2014, while the ZLF enforcement case, the Selzer fee case and the Horowitz legal malpractice Counter-Complaint were all still pending, the Horowitzes filed a Complaint against Continental[4] with the Maryland Insurance Administration ("MIA").[5]  *See*

---

[4] Although the Horowitzes also named E&W and ZLF as Respondents in the MIA Complaint, the MIA's regulatory authority is limited to insurance companies, producers, premium finance companies, motor clubs and HMOs licensed to conduct business in Maryland.  Accordingly, the MIA did not have jurisdiction over E&W, and the MIA

Exhibit 9, Horowitz MIA Complaint.[6]  In their MIA Complaint, the Horowitzes allege that the settlement of the Horowitz legal malpractice case and the ZLF fee Counter-Complaint constituted an illegal rebate in violation of § 27-212 of the Insurance Article and an unfair claim settlement practice in violation of § 27-304 of the Insurance Article.  *See id.* at pp. 1, 15.  Similar to the allegations in the case at bar, and to allegations made in the ZLF enforcement case and the Counter-Complaint in the Selzer fee case, the Horowitzes allege in the MIA Complaint that the Settlement Agreement is illegal (*see id.* at p. 6), and that E&W violated the Fair Debt Collection Practices Act (FDCPA), the Maryland Consumer Debt Collection Act (MCDCA) and the Maryland Consumer Protection Act (MCPA) in connection with negotiation and enforcement of the settlement (*see id.* at pp. 8-9).[7]  In the MIA Complaint, the Horowitzes request issuance of "cease and desist orders" and the imposition of criminal fines, penalties and sanctions.  *See id.* at p. 18.

---

Complaint was never served on E&W.  Furthermore, E&W is not referenced in the MIA October 28, 2014 determination letter, and has not participated in any of the MIA proceedings.

[5] The MIA Complaint is attached without Exhibits, which are both voluminous and irrelevant to E&W's arguments.

[6] The Court may take judicial notice of State administrative proceedings that are related to the allegations in the Complaint without converting a motion to dismiss into a motion for summary judgment.  *See U.S. v. Ritchie*, 342 F.3d 903, 909 (9th Cir. 2003) (explaining that "Courts may take judicial notice of some public records, including the records and reports of administrative bodies"); *Clarke v. DynCorp Intern, LLC*, 962 F. Supp. 2d 781, 787 (D. Md. 2013) (indicating that the Court may take judicial notice of administrative matters, such as EEOC proceedings); *Embassy Realty Investments, LLC v. City of Cleveland*, 877 F. Supp. 2d 564, 571 (N.D. Ohio 2012); *Johnson v. County of Nassau*, 411 F. Supp. 2d 171, 178 (E.D. N.Y. 2006) (holding that "the Court may take judicial notice of the records of state administrative procedures, as these are public records, without converting a motion to dismiss into one for summary judgment").

[7] Notably, in the MIA Complaint, the Horowitzes allege: "Eccleston told the Court on the record that it was not representing Zipin on the counterclaim that Zipin was handling pro se.  Until the case was settled in November 2013, Eccleston strictly maintain [sic] this appearance of separation to the Court, scrupulously avoided signing any pleadings, court papers or discovery certificates solely related to Zipin's counterclaim."  Exh. 9 at p. 3.  As discussed in Section IV.C.3.a, the Horowitzes' flat contradiction, in this case, of the statements made in their MIA Complaint, in an attempt to establish liability of E&W for alleged debt collection activity in this case, has no support in the record.

After considering the Horowitz MIA Complaint and a response letter from Continental, the MIA issued a determination that the Settlement Agreement did not constitute an illegal rebate and that the alleged conduct by Continental could not support a finding of unfair claim settlement practices under Section 27-304 of the Insurance Article.   Exhibit 10, MIA Determination Letter dated October 28, 2014 at pp. 3-4.   The MIA expressly determined that Continental's "actions are not in violation of Maryland law."   *Id.*   As part of its determination of the issues raised by the Horowitzes, the MIA specifically notes that the Horowitzes "knowingly agreed to the settlement, signed the settlement agreement voluntarily, and received and deposited the $125,000 settlement check to CNA[/Continental]."   *Id.* at p. 3.   Furthermore, the MIA observed in its decision letter to the Horowitzes that, "despite your receipt of the aforementioned $125,000 made by CNA in accordance with the terms of the settlement agreement in December of 2013, you did not return the funds and you did not file a complaint with the Insurance Administration until July 2014." *Id.* at pp. 3-4.[8]

**Instant Case**

The Horowitzes have now filed the instant action against E&W and other Defendants, which was subsequently amended, alleging causes of action for alleged violations of the Fair Debt Collection Practices Act (FDCPA), Declaratory Judgment, alleged violations of the Maryland Consumer Debt Collection Act (MCDCA), alleged violations of the Maryland Consumer Protection Act (MCPA) and alleged civil conspiracy.   As discussed in greater detail below, the Amended Complaint fails to state a claim against E&W for which relief may be granted, and it should be dismissed, with prejudice and without leave to further amend.

---

[8] After receipt of the October 28, 2014 MIA determination, the Horowitzes requested a hearing on their Complaint, which has not yet been scheduled.

## III.    STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 12(b)(6), a complaint may be dismissed if it fails to state a claim upon which relief can be granted.  The purpose of a motion under this Rule is to test the legal sufficiency of a claim.  *Chertkof v. Balt.*, 497 F. Supp. 1252, 1258 (D. Md. 1980).  Pursuant to Rule 12(b)(6), a claim may be dismissed if it appears beyond doubt that the plaintiff can prove no set of facts that would entitle her to relief.  *Conley v. Gibson*, 355 U.S. 41, 45-46, 78 S. Ct. 99 (1957); *Faulkner Advertising Ass'n v. Nissan Motor Corp.*, 905 F.2d 769, 771-72 (4th Cir. 1990).

In considering a motion to dismiss, the Court must accept all well-pleaded allegations of the complaint and construe the facts and all reasonable inferences therefrom in the light most favorable to the plaintiff.  *Ibarra v. United States*, 120 F.3d 472, 473 (4th Cir. 1997).  However, the court need not accept unsupported legal allegations or bald or conclusory factual allegations.  *Revene v. Charles Cnty. Comm'rs*, 882 F.2d 870, 873 (4th Cir. 1989); *United Black Firefighters v. Hirst*, 604 F.2d 844, 847 (4th Cir. 1979).   Of particular relevance to the facts at issue in this case, a Court may consider documents referenced in and relied upon by the complaint in a motion to dismiss without converting it into a motion for summary judgment.  *Md. Minority Contractor's Ass'n, Inc. v. Md. Stadium Auth.*, 70 F. Supp. 2d 580, 592 n.5 (D. Md. 1998).

## IV.    ARGUMENT

As discussed herein, the Horowitzes have alleged claims against E&W for: alleged violations of the FDCPA (Count 1), Declaratory Judgment (Count 2), alleged violations of the MCDCA and the MCPA (Counts 3-4) and alleged civil conspiracy (Count 5).[9]  In this action, the

---

[9] In Count VI of the Amended Complaint, the Horowitzes also allege violations of 42 U.S.C. § 1983 by the Selzer firm only.  Inasmuch as those allegations are not directed to E&W, they are not addressed herein.

Horowitzes attempt, for the fourth time,[10] to litigate issues premised upon the alleged illegality of the Settlement Agreement, issues which already have been decided against them.  For the reasons set forth below, the Horowitzes have not, and cannot, state a claim against E&W for which they are entitled to relief.  Accordingly, pursuant to Federal Rule of Procedure 12(b)(6), the Amended Complaint should be dismissed, with prejudice and without leave to further amend.

**A.**    **Plaintiffs' Claims Premised upon a Challenge to the Legality and/or Enforceability of the Settlement Agreement Are Precluded in Law and in Equity**

The primary factual basis of the claims alleged by the Horowitzes in the Amended Complaint is the alleged illegality and/or unenforceability of the Settlement Agreement reached by the parties in the Horowitz legal malpractice case and the ZLF fee Counter-Complaint. However, as addressed below, a host of legal and equitable principles dictate that the Horowitzes cannot pursue any claim based upon a challenge to the validity of the Agreement.

**1.**    **Plaintiffs' Claims Are Barred by Non-Mutual Collateral Estoppel**

The common law doctrine of collateral estoppel provides that, "when an issue of fact or law is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment, the determination is conclusive in a subsequent action between the parties, whether on the same or a different claim." *Colandrea v. Wilde Lake Community Ass'n*, 361 Md. 371, 387 (2000).  The purpose of the doctrine is to avoid the expense of multiple lawsuits, conserve judicial resources and reduce the possibility of inconsistent judicial decisions. *See id.*  Collateral estoppel may be non-mutual if one of the parties in the present action was neither a party nor in privity with a party to the prior action. *See Culver v. Md. Ins. Comm'r*, 175 Md. App. 645, 653 (2007).

---

[10] As discussed herein, the Horowitzes raised issues related to the alleged unenforceability of the Settlement Agreement in the ZLF enforcement case, the Selzer fee case and corresponding Horowitz legal malpractice Counter-Complaint, the MIA proceedings and, now, in the case at bar.

Non-mutual collateral estoppel is available when "a defendant seeks to prevent a plaintiff from relitigating an issue the plaintiff has previously litigated unsuccessfully in another action against a different party." *Welsh v. Gerber Prods., Inc.*, 315 Md. 510, 518 n.6 (1989). To establish application of non-mutual collateral estoppel, the following elements must be present: (1) the issue decided in the prior adjudication is identical to the issue presented in the instant action; (2) there was a final judgment on the merits; (3) the party against whom the doctrine is asserted is a party or in privity with a party to the prior adjudication; and (4) the party against whom the doctrine is asserted was given a fair opportunity to be heard on the issue. *See Culver*, 175 Md. App. at 657. Maryland Courts have held that the pendency of any appeal does not impact the finality of a Judgment for the application of collateral estoppel. *See Bryan v. State Farm Mut. Auto Ins. Co.*, 205 Md. App. 587, 604 (2012).

Here, all of the elements of non-mutual collateral estoppel are satisfied. The Horowitzes had a fair opportunity to be heard in the Selzer fee case and their Counter-Claim on the issue of whether the Settlement Agreement was valid. The Court held, in a final Judgment on the merits, after considering Cross-Motions for Summary Judgment and oral argument by the parties, that the Horowitzes by their voluntary actions had waived the right to challenge the legality and/or enforceability of the Agreement. Specifically, Judge Mason stated that, "in this case, for [the Horowitzes] to retain the monies on the one hand, the benefit of the agreement, and then on the other to claim that it is an illegal agreement, in the court's view, they cannot do, that that would, in fact, constitute a waiver." Exh. 8 at pp. 58-59. Although Plaintiffs have appealed Judge Mason's Ruling, as set forth above, Maryland Courts have specifically held that the pendency of an appeal does not impact the finality required for collateral estoppel. *See Bryan*, 205 Md. App. at 604. Accordingly, the Horowitzes cannot, for the fourth time, attempt to challenge the

14

Settlement Agreement in the instant case after the issues of its legality and enforceability have been fully litigated.[11]

The Horowitzes argue in their Amended Complaint that they did not have a full and fair opportunity to litigate the illegal rebate issue in the Selzer fee case and the Horowitz legal malpractice Counter-Complaint because they were not in possession of the complete CNA policy issued to ZLF at the time Judge Mason issued his rulings on the Cross-Motions for Summary Judgment. (Amended Compl. ¶ 50). However, the actual language in the Continental policy had no impact on Judge Mason's holding that the terms of the Settlement Agreement did not constitute an illegal rebate and/or violate the purpose of the Insurance Article. In their Amended Complaint, the Horowitzes strongly rely upon the allegation that the Continental policy "excludes securing the risk of uncollected or disputed accounts receivable of the insured, such as legal fees allegedly due Zipin from the Horowitzes." (Amended Compl. ¶ 84). However, as clearly reflected in the transcript of the hearing on the Cross-Motions for Summary Judgment before Judge Mason, that precise issue was undisputed. In fact, Judge Mason stated during the hearing: "I accept as an undisputed fact that CNA was not providing coverage for a failure to pay fees, that there's no such clause or provision in that policy. And nobody has disputed that." Exh. 8 at p. 51. Accordingly, the presence or absence in the Court record of the entire CNA policy issued to ZLF, which included the uncontested provision regarding the scope of coverage, did not alter Judge Mason's analysis of the arguments set forth by counsel during the hearing on the Cross-Motions for Summary Judgment.

---

[11] It is worth noting that, although the Horowitzes requested a hearing after receipt of the MIA October 28, 2014 determination letter so that the MIA proceeding is not yet final, the MIA also determined that the Settlement Agreement did not violate the Insurance Article. In addition, the MIA found it telling that the Horowitzes accepted the $125,000 check from Continental under the terms of the Agreement, failed to pay consideration to ZLF and waited many months after execution of the Agreement to file a Complaint with the MIA.

Thus, the Horowitzes, through Mr. Lopatto as their counsel, had a full and fair opportunity to litigate the illegal rebate issue, in conjunction with Judge Mason's consideration of the undisputed factual record on that point.  The Horowitzes cannot now seek to re-litigate that claim on the basis of a fact that was not in dispute at the time Judge Mason issued his rulings, and which was specifically considered by Judge Mason when entering Judgment in favor of the Selzer firm and the Bregman firm, and against the Horowitzes.  Thus, the Horowitzes cannot state a claim based upon allegations that the settlement constituted an illegal rebate or that the Agreement was illegal.

### 2.        Plaintiffs' Claims Are Barred by Their Voluntary Waiver

Under Maryland law, waiver is "an intentional and voluntary relinquishment of a known right."  *From the Heart Church Ministries, Inc. v. Philadelphia-Baltimore Annual Conf.*, 184 Md. App. 11, 48 (2009).  Courts have held that waiver may result from an express agreement, or it may be inferred from the circumstances.  *See Gold Coast Mall v. Larmar Corp.*, 298 Md. 96, 109 (1983).  A party's intention to waive must be clearly established.  *See id.*

Judge Mason ruled that the Horowitzes waived their right to challenge the legality of the Settlement Agreement.  *See* Exh. 8 at pp. 58-59.  By accepting the benefits of the Agreement, i.e., the $125,000 check from Continental, the Horowitzes waived any right to challenge any other aspect of the Agreement, including provisions they believe are not favorable to them, specifically, their obligation to pay $62,500 to ZLF.  The Ruling by Judge Mason was made in open Court on October 29, 2014 in the presence of Mr. Lopatto, Plaintiffs' counsel.  Exh. 8 at p. 56.  As set forth above, the Horowitzes, through their counsel, Mr. Lopatto, filed a Motion to Alter or Amend the Judgment based upon Judge Mason's ruling which was denied.  Exh. 7 at

Docket Nos. 107, 114, 124.   Accordingly, there is no basis for a claim by the Horowitzes premised upon a challenge to the legality of the Settlement Agreement.

>    **3.       Plaintiffs' Claims Are Barred by Their Ratification of the Settlement Agreement**

Pursuant to well-established Maryland contract law, in a situation where the agreement of one party to the contract is forced or involuntary, that party will not be bound by the commitment. *See Blum v. Blum*, 59 Md. App. 584, 594 (1984). If a party to a contract discovers that a fraud has been perpetrated in securing his agreement, he is put to an election of remedies, whereby he may rescind the contract or ratify its terms and attempt to collect damages. *See Merritt v. Craig*, 130 Md. App. 350, 358 (2000). Importantly, "[a] condition precedent to the right to rescind requires that the party against whom relief is sought be restored substantially to the position which he held before the termination was completed." *Blum*, 59 Md. App. at 594. As stated by the Court in *Cutler v. Sugarman Organization, Ltd.*, 88 Md. App. 567, 578 (1991), "[r]escission requires at a minimum that the party exercising a right to rescind notify the other party and demonstrate an unconditional willingness to return to the other party both the consideration that was given and any benefits received." Thus, "a party may not affirm the favorable part [of the contract] and avoid the unfavorable part." *Blum*, 59 Md. App. at 594. If a party does not rescind the contract, he may be deemed to have ratified it "by continuing to act in accordance with the contract, or by continuing to accept or claim benefits flowing from it." *Id.*

If the Horowitzes believed the terms of the Agreement had been fraudulently procured by any party, as alleged in the Amended Complaint, they had to elect a remedy, one option of which was to rescind the Agreement. To successfully rescind the Agreement, the Horowitzes were required to return the $125,000 payment received from Continental. Instead of making any effort to rescind the Agreement or avoid its burdens, the Horowitzes retained the $125,000. The

Horowitzes cannot, under Maryland law, retain the benefit of the $125,000 payment, the release of all claims against them and dismissal of the litigation, while refusing to pay to ZLF the $62,500 in consideration to secure such benefits.  By their election to retain the benefits, the Horowitzes ratified the Agreement, barring any challenge to its legality or validity.  Thus, pursuant to the doctrine of ratification, the Horowitzes cannot state causes of action based upon the alleged illegality or unenforceability of the Settlement Agreement.

### 4.      Plaintiffs' Claims Are Barred by the Doctrine of Unclean Hands

The doctrine of unclean hands, applicable to both cases at law and in equity, denies relief to those who have committed unlawful or inequitable conduct with respect to the matter for which relief is sought.  *See Mona v. Mona Elec. Grp., Inc*., 176 Md. App. 672, 713-714 (2007). The doctrine was created to "protect[] the integrity of the court and the judicial process by denying relief to those persons whose very presence before a court is the result of some fraud or inequity."  *Id.* at 714.   For the doctrine to apply, "[t]here must be a nexus between the misconduct and the transaction, because what is material is not that the plaintiff's hands are dirty, but that he dirties them in acquiring the right he now asserts."  *Hicks v. Gilbert*, 135 Md. App. 394, 400-01 (2000).  A party seeking application of the doctrine of unclean hands must demonstrate that "a party who engaged in misconduct, unlawful or inequitable, about a matter is trying to use the court system to obtain relief or profit with respect to that same matter."  *Mona*, 176 Md. App. at 719.  The doctrine works to bar claims asserted by a plaintiff that are tainted with the misconduct.  *See id.* at 717.

As discussed herein, the Horowitzes knowingly breached the Settlement Agreement by retaining the benefits of the Agreement while refusing to fulfill their obligations under the Agreement.  Despite their misconduct, which directly relates to the Settlement Agreement, the

Horowitzes are now attempting to assert a myriad of statutory and common law claims based upon the alleged illegality of that same Agreement.  This, the law will not allow.  The Horowitzes' unclean hands in their wrongful breach of the Agreement, from which they, alone, derived a benefit to the detriment of the other parties involved, precludes them from asserting a claim premised upon that Agreement.  Accordingly, the Amended Complaint should be dismissed, with prejudice and without leave to further amend.

### B.     Plaintiffs' Claims are Precluded by the Settlement Agreement and Release

As alleged in the Amended Complaint, the primary factual basis upon which the claims against E&W are premised is the alleged illegality and unenforceability of the Settlement Agreement.  However, the Settlement Agreement itself, which has been determined by the Circuit Court for Montgomery County to be a valid and enforceable contract, precludes the Horowitzes' claims against E&W alleged in this case.

The Settlement Agreement specifically states that the Horowitzes, as parties to the contract, agree to:

> remise, release and forever discharge, and do[] for their predecessors and successors, agents, insureds, servants, employees, heirs, executors, administrators, trustees, and assigns, remise, release and forever discharge each of the other **PARTIES** and all of their *agents*, affiliates, subsidiaries, servants, employees, shareholders, employers, stockholders, officers, directors, members, partners, associates, insurers, past and present, and all of their predecessors and successors, and all of their executors, administrators and/or assigns, of and from *all and every manner of acts and actions, cause and causes of actions, suits*, arbitrations, mediations, conciliations, debts, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, contracts, controversies, agreements, promises, variances, trespasses, damages, judgments, executions, claims and demands whatsoever in law or in equity, which against any of the **PARTIES** any of the other **PARTIES** ever had, now have, or their predecessors and successors, heirs, executors, administrators, assigns, related entities, persons and/or entities hereafter can, shall or may have, from the beginning of the world to the date of this **RELEASE**, whether known or unknown, suspected or unsuspected, fixed or contingent, including, but not limited to, all allegations that were or could have been asserted against any of the **PARTIES** in connection with the **ACTION**.

*See* Exh. 5 (emphasis added).   As an "agent" of ZLF, one of the parties to the Settlement Agreement, E&W was released by the Horowitzes from any claims and/or causes of action that arose prior to the signing of the Release, including any claims and/or causes of action in connection with the Horowitz legal malpractice case and the ZLF fee Counter-Complaint.   *See Advance Fin. Co., Inc. v. Trustees of Clients' Sec. Trust Fund of Bar of MD*, 337 Md. 195, 201 (1995) (stating that "agents are lawyers whose principals are clients").   Thus, the Horowitzes, by their own voluntary agreement to the terms of the Settlement Agreement and acceptance of the consideration set forth therein, are precluded from maintaining the claims alleged in this action against E&W.   Accordingly, the Amended Complaint should be dismissed, with prejudice and without leave to further amend.

C. **Plaintiffs Cannot State a Claim for Alleged Violations of the FDCPA, MCDCA and/or MCPA by E&W (Counts 1, 3 and 4)**

In light of the overlapping allegations by the Horowitzes pertaining to alleged violations of the FDCPA, MCDCA and MCPA, those claims are addressed together herein.   In support of their claims that E&W violated the federal and State debt collection statutes, the Horowitzes allege that E&W represented ZLF in the Horowitz legal malpractice case and in the ZLF fee Counter-Complaint.   (Amended Compl. ¶ 15).   The Horowitzes also allege that E&W acted as a "debt collector" in the Horowitz legal malpractice case and the ZLF fee Counter-Complaint (Amended Compl. ¶ 16) and, as such, E&W was required to be licensed under the Maryland Collection Agency Licensing Act, which it was not.   (Amended Compl. ¶ 18).

As alleged by the Horowitzes, "no defendant identified itself, in communication with the Horowitzes, as a debt collector that was making efforts to collect a consumer debt."   (Amended Compl. ¶ 43).   Specifically, the Horowitzes allege that E&W "signed court filings" in the

Horowitz legal malpractice case and ZLF fee Counter-Complaint (Amended Compl. ¶ 64),
including "signing a January 23, 2014, communication to the plaintiffs seeking sanctions,
beyond the debt amount, against the Horowitzes for not paying the Zipin consumer debt[.]"
(Amended Compl. ¶ 65).  Finally, the Horowitzes allege that E&W acted "oppressively and
unfairly toward [the Horowitzes] in that the November 2013 Settlement forced the Horowitzes to
dismiss their legal malpractice claim against [ZLF]."  (Amended Compl. ¶ 66).  In support of
their claim for alleged violations of the MCPA, the Horowitzes allege that E&W's alleged
violations of the MCDCA constitute violations of the MCPA.  (Amended Compl. ¶ 103).

For the reasons discussed herein, the Horowitzes cannot state a claim for which they are
entitled to relief for alleged violations of the FDCPA, MCDCA and MCPA by E&W.

### 1. Plaintiffs Cannot Premise Their Allegations of Alleged FDCPA, MCDCA and/or MCPA Violations on the Alleged Illegality of the Settlement Agreement

As discussed in Section IV.A, above, the Horowitzes' causes of action premised upon the
illegality, invalidity and/or unenforceability of the Settlement Agreement must fail.  Those
claims are barred by the Horowitzes' voluntary actions, and the validity of the Settlement
Agreement has already been decided by a final Judgment on the merits.  Thus, the Horowitzes
cannot state a claim against E&W that is based upon a challenge to the Settlement Agreement.

### 2. Plaintiffs' Claims for Alleged Violations of the FDCPA Are Barred by the Statute of Limitations

The FDCPA contains an unambiguous one-year statute of limitations for pursuing a
claim. *See* 15 U.S.C. § 1692k(d); *see also Fontell v. Hassett*, 870 F. Supp. 2d 395, 403 (D. Md.
2012).  In determining the accrual date for limitations purposes, the Court refers to the date on
which the defendant engaged in the allegedly abusive action, rather than any subsequent date on
which the plaintiff may have felt the harm. *See Fontell*, 870 F. Supp. 2d at 404.

As reflected by the docket, the Horowitzes filed the instant case on November 25, 2014. Accordingly, any conduct by E&W prior to November 25, 2013, which Plaintiffs allege violated the FDCPA, is barred by limitations.   As referenced above, the Settlement Agreement was finalized no later than November 20, 2013, the date on which the final version was provided to the Horowitzes' attorneys.   Thus, assuming *arguendo* that the FDCPA applies to the negotiated terms memorialized in the Agreement, any such communications with the Horowitzes' attorneys to negotiate the finalized Agreement concluded more than one (1) year prior to the filing of this case.   Therefore, the Horowitzes cannot state a claim against E&W for alleged violations of the FDCPA premised upon negotiations relating to the Settlement Agreement.

### 3. E&W Did Not Engage in Any "Debt Collection Activity"

To establish a claim under the FDCPA, a plaintiff must demonstrate that: (1) he has been the object of collection activity arising from a consumer debt; (2) the defendant is a debt collector as defined by the FDCPA and (3) the defendant has engaged in an act or omission prohibited by the FDCPA.  *See Stewart v. Bierman*, 859 F. Supp. 754, 759 (2012).  The MCDCA also requires proof of those elements, with the additional requirement that a defendant act with knowledge of his violation of the debtor's rights.  *See Kouabo v. Chevy Chase Bank, FSB*, 336 F. Supp. 2d 471, 475 (2004).  Assuming *arguendo* that the Horowitzes could establish the other elements for a claim under the FDCPA and/or the MCDCA, which E&W disputes, the Horowitzes cannot establish that E&W performed any debt collection activities relating to the Horowitzes.

### a. E&W Did Not Participate in the ZLF Fee Counter-Complaint

The Amended Complaint alleges that "Eccleston appeared on behalf of [ZLF] and at material times represented [ZLF] in both the debt collection counterclaim and in defense of the

legal malpractice claims." (Amended Compl. ¶ 15). Such an allegation is wholly unsupported by the record in the Horowitz legal malpractice case and the ZLF fee Counter-Complaint. Contrary to the Horowitzes' allegations, Mr. Zipin, not E&W, entered an appearance on behalf of ZLF in the ZLF Counter-Complaint for legal fees. Exh. 3 at p. 1; Exh. 4 at pp. 1, 7. Thereafter, ZLF handled all activities pertaining to the ZLF fee Counter-Complaint, including filing papers and pleadings with the Court and engaging in discovery. *See id.*

The disingenuous nature of the Horowitzes' allegations regarding E&W's alleged participation in the ZLF Counter-Complaint is clear from their prior admission in their Cross-Motion for Summary Judgment in the Selzer fee case, in which they stated, "Eccleston and Wolf were careful in defending [ZLF] in the Horowitz malpractice claim that Eccleston was not representing [ZLF] in his fee collection counterclaim. Eccleston so stated in Court on the record and did not sign any [ZLF] fee claim pleading, papers or document requests." Exhibit 11, Horowitzes' Cross-Motion for Summary Judgment Against Selzer Gurvich, at pp. 19-20. In a similar fashion, the Horowitzes admit in their MIA Complaint that E&W had no involvement in the ZLF fee Counter-Complaint. *See* Exh. 9 at p. 3 (stating that "Eccleston told the Court on the record that it was not representing Zipin on the counterclaim that Zipin was handling pro se. Until the case was settled in November 2013, Eccleston strictly maintain [sic] this appearance of separation to the Court, scrupulously avoided signing any pleadings, court papers or discovery certificates solely related to Zipin's counterclaim"). The Horowitzes' prior admissions and representations to the Court in the Selzer fee case and to the MIA refute their current allegation that E&W was involved in the Zipin Counter-Complaint. Such admissions preclude the Horowitzes from alleging here that E&W acted on behalf of ZLF in connection with ZLF's Counter-Complaint.

**b.      E&W Did Not Direct Any "Debt Collection Communications" to the Horowitzes**

15 U.S.C. § 1692e(11) provides that a debt collector must disclose "in the initial written communication with the consumer and, in addition, if the initial communication with the consumer is oral, in that initial oral communication, that the debt collector is attempting to collect a debt and that any information obtained will be used for that purpose, and . . . in subsequent communications that the communication is from a debt collector."  However, specifically exempted from the definition of "communication" under the statute is "a formal pleading made in connection with a legal action."  15 U.S.C. § 1692e(11).

The only "communications" identified by the Horowitzes in their Amended Complaint are pleadings and papers signed by E&W for filing with the Court.  Beyond the fact that E&W did not file any pleadings and/or papers with the Court in the ZLF fee Counter-Complaint, as discussed above, the FDCPA makes clear that statements made in filed pleadings do not constitute "communications" under the FDCPA.  Accordingly, the Horowitzes cannot state a claim based upon an allegation that communications from E&W violated the FDCPA.

**c.      The Purpose of the Debt Collection Statutes Is Not Implicated in Formal Litigation**

As stated by the Court in *Stewart v. Bierman*, 859 F. Supp. 2d 754, 759 (D. Md. 2012), "[t]he FDCPA protects consumers from abusive and deceptive practices by debt collectors, and protects non-abusive debt collectors from competitive disadvantage.  Section 1692e forbids the use of any false, deceptive, or misleading representation or means in debt collection and provides a non-exhaustive list of prohibited conduct."  Similarly, the MCDCA "protects consumers against certain threatening and underhanded methods used by debt collectors in attempting to recover on delinquent accounts."  *Id.* at 769.

24

Examples of prohibited conduct under the federal and State debt collection statutes include: a representation that non-payment of a debt will result in imprisonment; a false representation or implication that the consumer committed or crime for the purpose of disgracing the consumer; using or threatening force or violence; communicating with the consumer at late hours or in a manner reasonably expected to be abusive or harassing; and using obscene or grossly abusive language when communicating with a consumer. *See* 15 U.S.C. § 1692e; Commercial Law Article § 14-202.  The Court in *Fontell* explained that, in stark contrast to those activities, "[b]ringing a lawsuit to enforce the alleged debt is certainly not an improper debt collection method, since a legal action is meant to resolve issues surrounding the debt in a proper, impartial manner rather than through threats or coercion."  *Fontell*, 870 F. Supp. 2d at 413.

The Amended Complaint alleges that E&W participated in litigation against the Horowitzes.  There are no allegations, nor could there be, that E&W engaged in any abusive or threatening conduct that the debt collection statutes were established to guard against.  To the extent that the Horowitzes focus upon negotiation of the Settlement Agreement terms as a basis for their claims, the settlement occurred through the judicial process.  At the request of the Horowitzes, through their counsel, the parties participated in mediation facilitated by the Honorable Irma S. Raker, retired Judge of the Maryland Court of Appeals, during which the settlement terms that were ultimately agreed upon and memorialized in the Settlement Agreement were reached.  Accordingly, because the only conduct alleged to have been committed by E&W comprised its participation in the Horowitz malpractice case and the ZLF fee Counter-Complaint, such conduct does not violate the FDCPA and/or the MCDCA and

cannot form the basis for a claim against E&W.  The Amended Complaint should be dismissed, with prejudice and without leave to further amend.

### 4.  Eccleston and Wolf Is Exempt From the Licensing Requirements under the MCALA

In their Amended Complaint, as a further basis for their claims under the FDCPA and MCDCA, the Horowitzes allege that E&W was required to be licensed as a collection agency in accordance with the Maryland Collection Agency Licensing Act ("MCALA"), codified in Maryland Code, Business Regulations Article §§ 7-101, *et seq.*  (Amended Compl. ¶ 18). Pursuant to the statutory scheme, "a person must have a license whenever the person does business as a collection agency in the state."  Business Regulations Article § 7-301(a).  However, beyond the fact that E&W does not "do[] business as a collection agency," the statute provides an exemption for "a lawyer who is collecting a debt for a client, unless the lawyer has an employee who: (i) is not a lawyer; and (ii) is engaged primarily to solicit debts for collection or primarily makes contact with a debtor to collect or adjust a debt through a procedure identified with the operation of a collection agency."  Business Regulations Article § 7-102(b).

E&W denies the allegation in the Amended Complaint that it "appeared on behalf of Zipin and at material times represented Zipin in both the debt collection counterclaim and in defense of the legal malpractice claims."  (Amended Compl. ¶ 15).[12]  However, assuming *arguendo* that the allegations are true, which they are not, E&W falls squarely within the licensing exemption under the MCALA.  The Horowitzes allege violations of the MCALA by E&W based solely upon their contention that E&W represented ZLF in the ZLF Counter-

---

[12] As discussed in Section IV.C.3.a, above, that allegation is belied by the factual record and specifically contradicts admissions made by the Horowitzes in their Cross-Motion for Summary Judgment filed in the Selzer fee case and in the Horowitzes' MIA Complaint.  *See* Exh. 11 at pp. 19-20; Exh. 9 at p.3.

Complaint to collect unpaid legal fees.[13]  At the same time, the Horowitzes admit that E&W was acting on behalf of its client, ZLF.  Accordingly, even if these allegations were true, which the Horowitzes and Mr. Lopatto know they are not, the Horowitzes allege only that E&W acted as a lawyer collecting a debt for a client.  The Horowitzes do not, and in good faith could not, allege that E&W employs any non-lawyer individuals engaged primarily for the purpose of debt collection.  For these reasons, the Horowitzes cannot state a claim that E&W violated the MCALA.

### 5.        The MCPA Does not Apply to the Professional Services of Lawyers

In Counts 3 and 4, Plaintiffs allege that the violations by the Defendants, including E&W's violations of the MCDCA, also constitute a violation of the MCPA.  (Amended Compl. ¶ 29).  The MCPA, as codified in Maryland Code, Commercial Law Article §§ 13-101, *et seq*., prohibits unfair or deceptive trade practices that have the tendency or effect of misleading consumers.  Commercial Law Article § 13-301(1).

Section 13-104(1) of the Commercial Law Article provides, in relevant part: "This title does not apply to: The professional services of a . . . lawyer[.]"  Maryland case law interpreting this provision clearly confirms the plain meaning of the statute.  *See, e.g., Stewart v. Bierman*, 859 F. Supp. 2d 754, 768 (D. MD. 2012); *Robinson v. Fountainhead Title Grp. Corp*., 447 F. Supp. 2d 478, 490 (D. Md. 2006).  There is no dispute that E&W was, at all relevant times, providing professional services through the lawyers employed with the firm.  Accordingly, those professional services are exempt from the provisions of the MCPA.

---

[13] Pursuant to well-established law, an alleged violation of the MCALA, alone, does not give rise to a private cause of action.  *See Bradshaw v. Hillco Receivables, LLC*, 765 F. Supp. 2d 729, 727-28 (D. Md. 2011).  Thus, the Horowitzes must establish an independent violation of the FDCPA and/or the MCDCA, which, as set forth in Section IV.C.1-3, they cannot do.

The Horowitzes allege in their Amended Complaint that the exemption for lawyers under the MCPA does not apply when the lawyer is acting in the capacity of a "debt collector." However, this statutory interpretation is not supported by Maryland law and is contradictory to the plain meaning of Commercial Law Article § 13-104(1).  *See Stewart*, 859 F. Supp. 2d at 768 (holding that lawyers appointed as trustees were exempt from the MCPA because "this Court has applied the exemption to dismiss MCPA claims against the enumerated professionals even when plaintiffs have alleged that they were acting in some way other than their professional capacity"). Thus, the Horowitzes cannot state a claim against E&W premised upon alleged violations of the MCPA, and the Amended Complaint should be dismissed, with prejudice and without leave to further amend.

### D.    Plaintiffs Are Not Entitled to Declaratory Judgment (Count 2)

In Count 2 of their Amended Complaint, the Horowitzes request that this Court declare that all Defendants, including E&W, violated § 27-212 and § 27-303 of the Insurance Article of the Maryland Code and the debt collection statutes with regard to the Settlement Agreement in the Horowitz legal malpractice case and the ZLF fee Counter-Complaint.  (*See* Amended Compl. ¶¶ 76-95).  The Horowitzes seek Declaratory Judgment on a host of issues, all of which relate to the Settlement Agreement and Continental insurance policy issued to ZLF.  (*See id*.).  However, based upon the fact that the issues for which the Horowitzes seek Declaratory Judgment are currently alleged as independent causes of action in this and other cases, the Horowitzes are precluded from pursuing Declaratory Judgment relief.  Furthermore, even if the Horowitzes' claim in Count 2 were proper for Declaratory Judgment, as discussed herein, the issues for which the Horowitzes seek Declaratory Judgment were decided by Judge Mason in his rulings issued in the Selzer fee case and the Horowitz legal malpractice Counter-Complaint.  Accordingly, the

Horowitzes cannot state a claim for which they are entitled to relief based upon issues that have already been litigated and decided against them.

### 1.     Plaintiffs Cannot Pursue a Claim for Declaratory Judgment

The Declaratory Judgment Act, codified in § 3-409 of the Courts and Judicial Proceedings Article of the Maryland Code, provides an avenue for relief to litigants in certain limited circumstances.  As a general rule, "courts will not entertain a declaratory judgment action if there is pending, at the time of the commencement of the action for declaratory relief, another action or proceeding involving the same parties and in which the identical issues that are involved in the declaratory action may be adjudicated." *Waicker v. Colbert*, 347 Md. 108, 113 (1997).  This principle is based upon the rationale that "the Act is designed to supplement, not supersede, existing remedies at law and in equity, and accordingly where an immediate cause of action exists for which one of the existing remedies is available and adequate, a proceeding for declaratory judgment is not appropriate within the contemplation of the Act." *Davis v. State*, 183 Md. 385, 389 (1944).  In such a situation, only rare and compelling circumstances will lead the Court to permit a litigant to pursue an action for declaratory judgment. *Polakoff v. Hampton*, 148 Md. App. 13, 31 (2002).  Moreover, a Court, in its discretion, "may decline to exercise jurisdiction if it reasonably concludes that granting a declaratory judgment will not serve to terminate the uncertainty or controversy between the parties." *Id.* at 32.

Here, the causes of action alleged by the Horowitzes for alleged violations of the FDCPA, MCDCA and MCPA contain the identical issues for which the Horowitzes seek Declaratory Judgment in Count 2.  Thus, the request for Declaratory Judgment is duplicative. Moreover, resolution of the legal causes of action is a more efficient method of adjudicating those claims.  Given the Horowitzes' decision to assert legal causes of action against E&W based

upon issues in connection with the Settlement Agreement, an action for Declaratory Judgment on those same issues is not permitted.  The Horowitzes have not set forth any rare and compelling circumstances that would warrant this Court's exercise of its discretion to permit legal causes of action and a request for declaratory relief, on exactly the same issues, to be litigated in the same case.  Additionally, the Court in *Bradshaw v. Hilco Receivables, LLC*, 765 F. Supp. 2d 719, 733 (D. Md. 2011), specifically stated that "declaratory and injunctive relief is not available under the FDCPA, MCDCA, or the MCPA."

Accordingly, the Horowitzes cannot state a claim for Declaratory Judgment in Count 2, and the Amended Complaint should be dismissed, with prejudice and without leave to further amend.

### 2. Plaintiffs Cannot Premise their Claim for Declaratory Judgment on the Alleged Invalidity of the Settlement Agreement

Pursuant to § 3-409(a) of the Courts and Judicial Proceedings Article, "a court may grant a declaratory judgment or decree in a civil case, if it will serve to terminate the uncertainty or controversy giving rise to the proceeding, and if: (1) an actual controversy exists between contending parties; (2) antagonistic claims are present between the parties involved which indicate imminent and inevitable litigation; or (3) a party asserts a legal relation, status, right, or privilege and this is challenged or denied by an adversary party, who also has or asserts a concrete interest in it."  Thus, a proper action for declaratory relief requires that a claim exist between the parties.  However, the issues raised by the Horowitzes in Count 2 of the Amended Complaint relating to the legality and enforceability of the Settlement Agreement have already been decided and are no longer at issue.

The elements of non-mutual collateral estoppel are discussed in Section IV.A.1, above. All of those elements are satisfied by Judge Mason's ruling, which constitutes a final Judgment,

in the Selzer fee case and Horowitz legal malpractice Counter-Complaint that the Settlement Agreement is not an illegal rebate and constitutes a valid agreement.  This ruling was issued after a full and fair opportunity for the Horowitzes to litigate the issue through Cross-Motions for Summary Judgment and a hearing before Judge Mason.  As discussed herein, the Horowitzes were represented in that action by their attorneys in this case.  Thus, the Horowitzes cannot satisfy the necessary elements under the Declaratory Judgment Act to establish that an actual controversy exists with E&W.

Accordingly, based upon the Horowitzes' failure to state a claim for Declaratory Judgment, the Amended Complaint should be dismissed, with prejudice and without leave to further amend.

### E.      Plaintiffs Cannot Establish a Claim for Alleged Civil Conspiracy (Count 5) by E&W

In support of their claim for alleged civil conspiracy in Count V of the Amended Complaint, the Horowitzes allege that the Defendants by agreement and understanding intentionally worked together to coerce the Horowitzes to enter into and perform the Settlement Agreement (Amended Compl. ¶ 105), and that the Defendants' tortious activity "violated the plaintiffs' legal rights set forth in the FDCPA, the Md. CPA; the Md. DCA; and the Md. Unfair Trade Practices Insurance Act."  (*Id*. at ¶ 90).  The Horowitzes do not set forth any other allegations in support of their cause of action for alleged civil conspiracy against E&W.  As discussed above, based upon the lack of factual and/or legal support for the causes of action alleged by the Horowitzes in Counts I-IV, they cannot maintain a claim for alleged civil conspiracy against E&W.

Maryland law is clear that, to establish a claim for civil conspiracy, the plaintiffs must prove the following elements: (1) a confederation of two or more persons by agreement or

understanding; (2) some unlawful or tortious act done in furtherance of the conspiracy or use of unlawful or tortious means to accomplish an act not in itself illegal and (3) actual legal damage resulting to the plaintiffs. *See Lloyd v. Gen. Motors Corp.*, 397 Md. 108, 154 (2007). Maryland Courts have held that conspiracy is not a separate tort capable of independently sustaining an award of damages in the absence of actual tortious injury to the plaintiffs. *See id*. In other words, "[n]o action in tort lies for conspiracy to do something unless the acts actually done, if done by one person, would constitute a tort." *Domchick v. Greenbelt Servs.*, 200 Md. 36, 42 (1952).

For the reasons discussed herein, the Horowitzes have not, and cannot, establish any alleged statutory violations by E&W in the course of the Horowitz legal malpractice case, the ZLF fee Counter-Complaint and/or the settlement of those claims. In the absence of any independent wrongful conduct by E&W, the Horowitzes cannot establish that E&W engaged in an alleged conspiracy to cause tortious injury to the Horowitzes.

## V.      CONCLUSION

For the reasons discussed herein, Eccleston and Wolf, P.C. respectfully requests that this Court dismiss Plaintiffs' Amended Complaint, with prejudice and without leave to further amend, and requests such other and further relief as this Court deems just and proper under the circumstances.

Respectfully submitted,


| /s/Shirlie Norris Lake | /s/Ashley L. Marucci |
|---|---|

Shirlie Norris Lake (Fed. Bar No. 01705)   Ashley L. Marucci (Fed Bar No. 18642)
ECCLESTON & WOLF, P.C.                     ECCLESTON & WOLF, P.C.
Baltimore-Washington Law Center            Baltimore-Washington Law Center
7240 Parkway Drive, 4th Floor              7240 Parkway Drive, 4th Floor
Hanover, MD 21076-1378                     Hanover, MD 21076-1378
(410) 752-7474 (phone)                     (410) 752-7474
(410) 752-0611 (fax)                       (410) 752-0611 (fax)
E-mail: lake@ewmd.com                      E-mail: marucci@ewmd.com
*Attorney for  Defendant,*                 *Attorney for Defendant,*

*Eccleston and Wolf, P.C.*                 *Eccleston and Wolf, P.C.*




## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that copies of the foregoing Motion to Dismiss the First Amended

Complaint and supporting Memorandum of Law were electronically filed with the Court in this

case on April 28, 2015, for distribution to all persons on the Clerk's electronic mailing list:

> John S. Lopatto III, Esquire
> Law Offices of John Lopatto III
> 1776 K St., N.W., Suite 700
> Washington, D.C. 20006
> *Attorney for Plaintiffs*
>
> Rachel T. McGuckian, Esquire
> Rachel A. Shapiro, Esquire
> Miles & Stockbridge, P.C.
> 11 North Washington Street, Suite 700
> Rockville, Maryland 20850
> *Attorneys for Defendant, Selzer Gurvitch Rabin*
> *Wertheimer Polott & Obecny, P.C.*

Kathleen H. Warin, Esquire
Helyna M. Haussler, Esquire
Wilson, Elser, Moskowitz, Edelman & Dicker, LLP
700 11th Street, N.W., Suite 400
Washington, D.C. 20001
*Attorneys for Defendant, Bregman, Berbert, Schwartz &*
*Gilday, LLC*

Karen Ventrell, Esquire
Colliau Carluccio Keener Morrow Peterson & Parsons
2020 K Street, N.W., Suite 505
Washington, D.C. 20006
*Attorneys for Defendant, Continental Casualty Company*

*/s/Ashley L. Marucci*
Ashley L. Marucci