IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

|  |  |  |
|---|---|---|
| | : | |
| ROBERT HOROWITZ, et al. | : | |
| v. | : | Civil Action No. DKC 14-3698 |
| | : | |
| CONTINENTAL CASUALTY COMPANY, et al. | : | |

**MEMORANDUM OPINION**

Presently pending and ready for resolution in this case are multiple motions to dismiss filed by the following defendants: Selzer Gurvitch Rabin Wertheimer Polott & Obecny, P.C. ("Selzer") (ECF No. 11); Bregman, Berbert, Schwartz & Gilday, LLC ("Bregman") (ECF No. 12); Eccleston and Wolf, P.C. ("Eccleston") (ECF No. 21); and Continental Casualty Company ("Continental") (collectively, the "Defendants") (ECF No. 24). Also pending is a motion for extension of time filed by Plaintiffs Robert and Cathy Horowitz (collectively, the "Horowitzes" or "Plaintiffs"). (ECF No. 35). The relevant issues have been fully briefed, and the court now rules, no hearing being deemed necessary. Local Rule 105.6. For the following reasons, Defendants' motions to dismiss will be granted. Plaintiffs' motion for extension of time will be denied as moot.

## I.   Background

### A.   Factual Background

Unless otherwise noted, the following facts are taken from the first amended complaint.  (ECF No. 5).  Additional facts will be discussed in the analysis section.

The parties' long and winding journey to this suit began as a contract, employment, and tort action brought in state court by Plaintiffs against the McLean School of Maryland, Inc. (the "School") for conduct occurring in 2008.  Plaintiffs were represented in this initial suit by the Zipin Law Firm, LLC (the "Zipin Firm").  In 2012, following the conclusion of the suit against the School, Plaintiffs filed a legal malpractice and breach of fiduciary duty action against the Zipin Firm in state court.  The Zipin Firm, through its own attorneys, filed a counterclaim to collect unpaid legal fees Plaintiffs owed for the Zipin Firm's work in their suit against the School. Continental, as the Zipin Firm's insurer, retained and paid Eccleston to defend the Zipin Firm in the malpractice suit. (ECF Nos. 5 ¶ 15; 24-1, at 4).  Plaintiffs were represented by Selzer and Bregman.  (ECF No. 5 ¶ 23).  In November 2013, following mediation, Plaintiffs and the Zipin Firm entered into a Settlement Agreement and Release (the "Settlement").  (ECF No. 5-2).  Relevant here, the Settlement stated:

> As consideration for the terms and conditions set forth in this Settlement Agreement, the PARTIES agree that ROBERT AND CATHY HOROWITZ will be paid $125,000.00 by check issued by [Continental] on behalf of THE ZIPIN LAW FIRM, LLC; and that THE ZIPIN LAW FIRM, LLC will be paid $62,500.00 by ROBERT AND CATHY HOROWITZ, said payment to be made by check not later than 15 business days following receipt and deposit of [Continental's] $125,000.00 check by ROBERT AND CATHY HOROWITZ.

(*Id.* ¶ 18).  As a result of the Settlement, Plaintiffs dismissed their malpractice claim and the Zipin Firm dismissed the counterclaim to collect a fee.  (ECF No. 24-3, at 43).[1] Plaintiffs received the $125,000.00 check from Continental, but they did not provide any of the stipulated payment to the Zipin Firm.  (ECF No. 5 ¶ 61).

Following the Settlement, Selzer filed suit against the Horowitzes in the Circuit Court for Montgomery County (the "circuit court") to collect unpaid legal work done in Plaintiff's suit against the Zipin Firm.  (ECF Nos. 5 ¶ 55; 24-4).  The Horowitzes filed a counterclaim against Selzer and

---

[1] In reviewing a motion to dismiss, "a federal court may consider matters of public record such as documents from prior state court proceedings." *Walker v. Kelly*, 589 F.3d 127, 139 (4th Cir. 2009).  This is particularly true where, as here, Defendants seek dismissal pursuant to the doctrines of *res judicata* and collateral estoppel.  *See Brooks v. Arthur*, 626 F.3d 194, 200 (4th Cir. 2010) ("[W]hen entertaining a motion to dismiss on the ground of res judicata, a court may take judicial notice of facts from a prior judicial proceeding when the res judicata defense raises no disputed issue of fact." (citation and internal quotation marks omitted)).

Bregman alleging malpractice in the suit against Zipin Firm, asserting *inter alia* that the Settlement was illegal. (ECF Nos. 24-4, at 6; 24-5).  At a hearing on October 29, 2014, Judge Michael D. Mason granted summary judgment in favor of Selzer and Bregman and entered judgment against the Horowitzes. (ECF Nos. 24-4, at 18-19; 24-6, at 57-70).  The Horowitzes filed a motion to alter or amend the judgment, which the court denied.  The Horowitzes' appeal is currently pending before the Court of Special Appeals and was scheduled for argument on December 9, 2015.

On July 30, 2014, while the suit was ongoing in circuit court, the Horowitzes filed a complaint against Continental with the Maryland Insurance Administration (the "MIA") challenging the legality of the Settlement under Maryland insurance statutes.  (ECF No. 24-7).  The MIA determined that the Settlement did not violate "Maryland's insurance regulatory laws," and Plaintiffs requested a hearing.  (ECF Nos. 24-9; 24-10).  To date, it appears that no hearing has taken place.

On November 14, 2014, Selzer filed a request for a writ of execution of the Horowitzes' personal property to execute on the judgment entered by the circuit court.  (ECF Nos. 5 ¶ 111; 11-4, at 23).  The circuit court issued a writ of execution, and Plaintiffs assert that, over the next few weeks, deputies from the Montgomery County Sheriff's Office attempted to execute the

writ through allegedly threatening and deceptive means. (ECF No. 5 ¶¶ 112-120).

### B. Procedural History

On November 25, 2014, Plaintiffs commenced this action by filing a complaint, which was subsequently amended. (ECF No. 5). The first amended complaint asserts that all Defendants: violated the Fair Debt Collection Practices Act ("FDCPA") (Count I); violated the Maryland Consumer Debt Collection Act (the "MCDCA") (Count III); violated the Maryland Consumer Protection Act (the "MCPA") (Count IV); and committed civil conspiracy (Count V). The complaint also seeks declaratory judgment (Count II) and alleges that Selzer violated 42 U.S.C. § 1983 (Count VI).

In April 2015, Defendants separately filed the pending motions to dismiss. (ECF Nos. 11; 12; 21; 24). Plaintiffs filed responses in opposition (ECF Nos. 27; 34; 36), and Defendants replied (ECF Nos. 30; 31; 38; 39). Plaintiffs have also filed multiple motions for extension of time, including one which is still pending. (ECF No. 35).

## II. Standard of Review

The purpose of a motion to dismiss under Rule 12(b)(6) is to test the sufficiency of the complaint. *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006). A plaintiff's complaint need only satisfy the standard of Rule

8(a), which requires a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2). "Rule 8(a)(2) still requires a 'showing,' rather than a blanket assertion, of entitlement to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 n.3 (2007). That showing must consist of more than "a formulaic recitation of the elements of a cause of action" or "naked assertion[s] devoid of further factual enhancement." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citations and internal quotation marks omitted).

At this stage, all well-pleaded allegations in a complaint must be considered as true, *Albright v. Oliver*, 510 U.S. 266, 268 (1994), and all factual allegations must be construed in the light most favorable to the plaintiff. *See Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 783 (4th Cir. 1999) (citing *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993)). In evaluating the complaint, unsupported legal allegations need not be accepted. *Revene v. Charles Cnty. Comm'rs*, 882 F.2d 870, 873 (4th Cir. 1989). Legal conclusions couched as factual allegations are insufficient, *Iqbal*, 556 U.S. at 678, as are conclusory factual allegations devoid of any reference to actual events. *United Black Firefighters v. Hirst*, 604 F.2d 844, 847 (4th Cir. 1979); *see also Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009). "[W]here the well-pleaded facts do not permit the court to infer more than

the mere possibility of misconduct, the complaint has alleged—
but it has not 'show[n]'—'that the pleader is entitled to
relief.'"  *Iqbal*, 556 U.S. at 679 (quoting Fed.R.Civ.P.
8(a)(2)).  Thus, "[d]etermining whether a complaint states a
plausible claim for relief will . . . be a context-specific task
that requires the reviewing court to draw on its judicial
experience and common sense."  *Id.*

## III. Analysis

### A.  *Res Judicata*

Defendants Selzer and Bregman argue that all of Plaintiffs'
claims against them in Counts I through V are barred by the
doctrine of *res judicata* or claim preclusion.  Claim preclusion
"bars the relitigation of a claim if there is a final judgment
in a previous litigation where the parties, the subject matter
and causes of action are identical or substantially identical as
to issues actually litigated and as to those which could have or
should have been raised in the previous litigation."  *Andrulonis
v. Andrulonis*, 193 Md.App. 601, 617 (2010) (citations and
internal quotation marks omitted).  Thus, under Maryland law,
claim preclusion "embodies three elements: (1) the parties in
the present litigation are the same or in privity with the
parties to the earlier litigation; (2) the claim presented in
the current action is identical to that determined or that which
could have been raised and determined in the prior litigation;

and (3) there was a final judgment on the merits in the prior litigation." *Comptroller of Treasury v. Sci. Applications Int'l Corp.*, 405 Md. 185, 195-96 (2008) (quoting *R&D 2001, LLC v. Rice*, 402 Md. 648, 663 (2008)). The doctrine is meant to "restrain[] a party from litigating the same claim repeatedly and ensure[] that courts do not waste time adjudicating matters which have been decided or could have been decided fully and fairly." *Anne Arundel Cnty. Bd. of Educ. v. Norville*, 390 Md. 93, 107 (2005).

Obviously, Selzer and Bregman were parties in the state court suit. Further, there was a final judgment on the merits in their favor.[2] Plaintiffs argue that claim preclusion does not apply where, as here, the earlier claims were permissive counterclaims. (*See* ECF No. 27, at 3). Under Maryland's permissive counterclaim rule,

> [W]here a defendant could have brought a counterclaim in the first action *but failed to do so*, he is not precluded from bringing that claim in a subsequent action unless "successful prosecution of the second action would nullify the initial judgment or would impair rights established in the initial action."

---

[2] Plaintiffs do not argue to the contrary even though they note there is an appeal pending before the Court of Special Appeals. In Maryland, "the pendency of an appeal does not affect the finality of a judgment for *res judicata* [or collateral estoppel] purposes." *Campbell v. Lake Hallowell Homeowners Ass'n*, 157 Md.App. 504, 525 (2004).

*Hawkins v. Citicorp Credit Servs., Inc.*, 665 F.Supp.2d 518, 525 (D.Md. 2009) (emphasis added) (quoting *Sheahy v. Primus Auto. Fin. Serv. Inc.*, 284 F.Supp.2d 278, 280 (D.Md. 2003)). Plaintiffs' argument is unpersuasive for two reasons. First, in instances when courts have found that claim preclusion did not apply, the party did not actually bring a counterclaim to judgment in the initial suit. *See Moore v. Nissan Motor Acceptance Corp.*, 376 Md. 558, 567 (2003) (noting that the defendant "neither sought nor received any affirmative relief" in the initial action); *Rowland v. Harrison*, 320 Md. 223 (1990) (counterclaim was dismissed without prejudice in initial action). Here, Plaintiffs *did* bring a counterclaim against Selzer and Bregman in state court, and the court entered judgment against the Horowitzes. (ECF No. 24-4, at 19-20). Moreover, this action is a second suit that would nullify the initial judgment or impair rights established in the earlier suit. *See Hawkins*, 665 F.Supp.2d at 525-26. Plaintiffs' current suit, if successful, would directly contradict the circuit court's judgment. Much like in *Hawkins*, Plaintiffs "implicitly seek[] to nullify a portion of the prior judgment by asserting that [their] liability . . . was contrary to law and seeking damages for the efforts to collect." *Id.* at 526. Thus, claim preclusion is applicable despite Maryland's permissive counterclaim rule.

Plaintiffs also argue that claim preclusion does not apply because they are bringing "different claims" than were raised in the state court proceeding. (*See* ECF No. 27, at 11-13). When determining if claim preclusion applies, Maryland courts use the transactional approach articulated in the Restatement (Second) of Judgments § 24. "Under the transactional approach, if the two claims or theories are based upon the same set of facts and one would expect them to be tried together ordinarily, then a party must bring them simultaneously." *Anne Arundel Cnty. Bd. of Educ.*, 390 Md. at 108. The approach has been termed a "broad, inclusive test." *W. Md. Wireless Connection v. Zini*, 601 F.Supp.2d 634, 641 (D.Md. 2009). Maryland courts have indicated that claims involve the same "transaction" when they are "related in time, space, origin, or motivation." *Anne Arundel Cnty. Bd. of Educ.*, 390 Md. at 109 (citations and internal quotation marks omitted). Here, although Plaintiffs present some slightly different legal theories than were raised in the state court action, the claims all arise from the same transaction: Selzer and Bregman's representation of Plaintiffs in their suit against the Zipin Firm. *See Gonsalves v. Bingel*, 194 Md.App. 695, 711 (2010) (quoting Restatement (Second) of Judgments § 24 cmt. a) ("The present trend is to see claim in factual terms and to make it coterminous with the transaction regardless of the number of substantive theories, or variant

forms of relief flowing from those theories, that may be available to the plaintiff."). Accordingly, all claims against Selzer and Bregman in Counts I through V will be dismissed.

**B.  Collateral Estoppel**

All Defendants argue that Plaintiffs are precluded from bringing some claims by the related doctrine of collateral estoppel, also known as issue preclusion, because the circuit court ruled on the issues presented and entered judgment against Plaintiffs.  Specifically, Defendants assert that the circuit court held that the Settlement was legal and that Plaintiffs waived any objection to it by accepting the $125,000 payment. (ECF No. 24-6, at 60-65).  "When an issue of fact or law is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment, the determination is conclusive in a subsequent action."  *John Crane, Inc. v. Puller*, 169 Md.App. 1, 26 (2006) (citations omitted).  Collateral estoppel is rooted in common law, and its scope is determined by the appropriate state law.  *Housley v. Holquist*, No. 10-1881, 2012 WL 3239887, at *3 (D.Md. Aug. 3, 2012) (citing *Janes v. State*, 350 Md. 284 (1984)).  "[A] federal court must give to a state-court judgment the same preclusive effect as would be given that judgment under the law of the State in which the judgment was rendered."  *Migra v. Warren City School Dist. Bd. of Educ.*, 465 U.S. 75, 81 (1984).

In Maryland, the defense of collateral estoppel depends on the answers to four questions:

> "(1) Was the issue decided in the prior adjudication identical with the one presented in the action in question?
> (2) Was there a final judgment on the merits?
> (3) Was the party against whom the plea is asserted a party or in privity with a party to the prior adjudication?
> (4) Was the party against whom the plea is asserted given a fair opportunity to be heard on the issue?"

*Bryan v. State Farm Mut. Auto. Ins. Co.*, 205 Md.App. 587, 592 (2012) (quoting *Colandrea v. Wilde Lake Cmty. Ass'n*, 361 Md. 371 (2000)). As an affirmative defense, Defendants bear the burden of proof to demonstrate that these elements are met. Plaintiffs do not dispute that the second and third elements are met.

Plaintiffs argue that the first element is not met because the issue decided in the state court proceeding was not the same as the issues presented here. They contend that the first amended complaint asserts legal theories that were not raised in the state court proceeding. Collateral estoppel requires that the issue was "actually litigated and determined" in the prior proceeding. *Janes*, 350 Md. at 295. An issue may be collaterally estopped even if a plaintiff did not raise that particular legal theory in the prior proceeding because "the concern of collateral estoppel law is with the preclusion of duplicative fact-finding." *Puller*, 169 Md.App. at 27–28

(citations and internal quotation marks omitted). In adjudicating the cross-motions for summary judgment, the circuit court ruled that Plaintiffs' acceptance of the $125,000.00 payment under the Settlement constituted a waiver of their argument that the Settlement was illegal. (ECF No. 24-6, at 59-60). Further, the circuit court held that the Settlement was not a violation of Maryland insurance laws. (*Id.* at 60-65). Plaintiffs had extensive opportunity to litigate these issues as evidenced by the extensive state court docket and detailed transcript from the hearing before Judge Mason. (ECF Nos. 24-4; 24-6). Accordingly, the first element of collateral estoppel has been met as to the issues of Plaintiffs' waiver of their illegality argument and the Settlement's legality under Maryland insurance law.

Plaintiffs also contend that they were not given a full and fair opportunity to be heard in the circuit court. Plaintiffs' argument is unpersuasive. Plaintiffs filed a motion for summary judgment on their counterclaim and presented their arguments at a hearing. The Circuit Court's ruling was thorough, detailed, and extensively discussed relevant precedent. Moreover, Plaintiffs filed a motion to alter and amend the circuit court's judgment, which was fully briefed and denied. (ECF No. 24-4, at 20-22). Plaintiffs were afforded a full opportunity to present arguments before the circuit court on the issues they raised in

their counterclaim. The requirements of collateral estoppel have been satisfied, and Plaintiffs cannot relitigate the issue of whether they waived their illegality argument by accepting the $125,000 payment under the Settlement. Thus, Plaintiffs cannot now argue that the Settlement was illegal. Plaintiffs are correct, however, that the first amended complaint contains some claims that do not depend on the illegality of the Settlement. Accordingly, any claim that relies on the illegality of the Settlement will be dismissed.

### C. Plaintiffs' Failure to State a Claim

Defendants also argue that Plaintiffs' complaint should be dismissed for failure to state a claim, particularly because Plaintiffs are collaterally estopped from arguing that the Settlement was illegal. Defendants contend that collateral estoppel warrants dismissal of all counts because all of Plaintiffs' allegations are grounded in the illegality of the Settlement. Defendants are correct that many of the allegations in the first amended complaint are based on the illegality of the Settlement, and thus are precluded. However, the first amended complaint contains several claims that do not rely on the Settlement's illegality and that warrant further considerations under Rule 12(b)(6). The following analysis for Counts I through V will be limited to Defendants Continental and Eccleston because Plaintiffs' claims in these counts against

14

Defendants Selzer and Bregman are fully precluded by *res judicata* and are therefore dismissed. Plaintiffs' § 1983 claims against Selzer in Count VI will also be considered below.

### 1. Statutory Violations (Counts I, III, IV)

Plaintiffs' complaint includes many allegations that Continental and Eccleston violated various provisions of the FDCPA, MCDCA, MCPA, the Maryland Collection Agency Licensing Act ("MCALA"), and the Maryland Unfair Insurance Practices Act. Plaintiffs assert that Continental and Eccleston's "liability to plaintiff[s] is grounded on their using unlawful practices as third party debt collectors to collect on [the Zipin Firm's] consumer debt with the Horowitzes." (ECF Nos. 34, at 8; 36, at 8). Most of Plaintiffs' statutory claims depend on the Settlement's illegality and therefore are precluded. The first amended complaint makes the following allegations, which are not precluded:

- Neither Continental nor Eccleston obtained the required license as a debt collector under the Maryland Collection Agency Licensing Act (ECF No. 5 ¶¶ 12, 18);

- Each defendant failed to identify itself "as a debt collector that was making efforts to collect a consumer debt" in violation of the FDCPA (*Id.* ¶ 43); and

15

- Eccleston sought "sanctions, beyond the debt amount, against [Plaintiffs] for not paying the Zipin [Firm] consumer debt, a direct violation of the FDCPA at 15 U.S.C. § 1692f(1)" (*Id.* ¶ 65).

"To succeed on a FDCPA claim a plaintiff must demonstrate that '(1) the plaintiff has been the object of collection activity arising from consumer debt, (2) the defendant is a debt [] collector as defined by the FDCPA, and (3) the defendant has engaged in an act or omission prohibited by the FDCPA.'" *Stewart v. Bierman*, 859 F.Supp.2d 754, 759 (D.Md. 2012) (quoting *Dikun v. Streich*, 369 F.Supp.2d 781, 784-85 (E.D.Va. 2005)). A "debt collector" is "any person . . . in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6).

Plaintiffs do not plead facts showing that Eccleston and Continental were debt collectors under the FDCPA. Continental provided insurance coverage for the Zipin Firm, and Eccleston defended the Zipin Firm in Plaintiffs' malpractice suit. A law firm can be a debt collector under the FDCPA if it is in the business of regularly engaging in consumer-debt-collection activity. *See Heintz v. Jenkins*, 514 U.S. 291, 299 (1995) (applying the FDCPA "to attorneys who '*regularly*' engage in

16

consumer-debt-collection activity" (emphasis added)); *Stewart*, 859 F.Supp.2d at 761 (applying the FDCPA to a law firm initiating foreclosure suits); *Bradshaw v. Hilco Receivables, LLC*, 765 F.Supp.2d 719, 724-25 (D.Md. 2011) (applying the FDCPA to a law firm that was in the business of buying consumer debt and initiating suits to collect).  Plaintiffs fail plead facts showing that Continental and Eccleston engage in debt collection activities at all, let alone as a regular course of business.

Moreover, "[i]t is well established that 'the threshold requirement for application of the [FDCPA] is that prohibited practices are used in an attempt to collect a debt.'" *Bradshaw*, 765 F.Supp.2d at 725 (quoting *Mabe v. G.C. Servs. Ltd. P'ship*, 32 F.3d 86, 87-88 (4th Cir. 1994)).  Plaintiffs assert that Eccleston represented the Zipin Firm in its action to recover unpaid fees, but Mr. Zipin and other lawyers at the Zipin Firm represented themselves in the fee-recovery portion.  (*See, e.g.*, ECF No. 21-7, at 8).  Plaintiffs have not alleged facts, beyond conclusory accusations, that Continental and Eccleston undertook any debt collection activities.  Rather, Plaintiffs argue that Continental and Eccleston's actions were covered by the FDCPA because they attempted to enforce the Settlement, but such an argument is unavailing.  *See Fleet Nat. Bank v. Baker*, 263 F.Supp.2d 150, 153-54 (D.Mass. 2003) (noting that the "enforcement of a Settlement rather than a generic debt

collection action compels the finding that the FDCPA does not apply"). Plaintiffs cannot invoke the FDCPA by baldly labeling Defendants as debt collectors engaging in debt collection activities.

The only other statutory violation Plaintiffs allege, which is not barred by issue preclusion, is that Continental and Eccleston failed to obtain a license as a debt collector in violation of the MCALA. Under the MCALA, "a person must have a license whenever the person does business as a collection agency" within Maryland. Md. Code., Bus. Reg. § 7-301. As discussed above, Plaintiffs do not plead facts showing that Continental or Eccleston were doing business as a collection agency. Rather, they were defending the Zipin Firm in their malpractice suit and attempting to enforce the Settlement. Accordingly, Counts I, III, and IV will be dismissed.

**2.   Declaratory Judgment (Count II)**

Plaintiffs seek declaratory judgment on multiple issues. (ECF No. 5 ¶¶ 76-95). The Declaratory Judgment Act, 28 U.S.C. § 2201, authorizes a district court to, in its discretion, "declare the rights and other legal relations of any interested party seeking such declaration." Plaintiffs' request for declaratory judgment is deficient for multiple reasons. First, inasmuch as the complaint seeks declaratory judgment for the alleged statutory violations, "declaratory and injunctive relief

is not available under the FDCPA, MCDCA, or the MCPA."
*Bradshaw*, 765 F.Supp.2d at 733 (citation omitted). Furthermore,
the aforementioned principles of claim and issue preclusion
apply regarding the allegations of the Settlement's illegality.
In their opposition, Plaintiffs assert that declaratory judgment
is appropriate because the Settlement "is so legally specious
that rights existing under that Settlement will have to be
clarified in the Count 2 Declaratory Judgment." (ECF No. 34, at
13). This is the exact argument that Plaintiffs are
collaterally estopped from making. Plaintiffs cannot request
declaratory judgment by relying on the illegality of the
Settlement. Accordingly, Count II will be dismissed.

### 3.   Civil Conspiracy (Count V)

Plaintiffs allege that Defendants engaged in a civil
conspiracy "to coerce, induce, and require plaintiffs to enter
into and perform under the unlawful, unfair, and unconscionable
November 2013 Settlement" and to violate Plaintiffs' "legal
rights set forth in the FDCPA; the [MCPA]; the [MCDCA]; and the
Unfair Trade Practices Insurance Act." (ECF No. 5 ¶¶ 105–106).
In Maryland, civil conspiracy is "a combination of two or more
persons by an agreement or understanding to accomplish an
unlawful act or to use unlawful means to accomplish an act not
in itself illegal, with the further requirement that the act or
the means employed must result in damages to the plaintiff."

*Hoffman v. Stamper*, 385 Md. 1, 24 (2005) (citations and internal quotation marks omitted).   In addition, the plaintiff must "prove the commission of an overt act, in furtherance of the agreement, that caused the plaintiff to suffer actual injury." *Id.* at 25.

In Maryland, conspiracy is not a distinct tort that can sustain an award of damages in the absence of an underlying action.   *Alexander & Alexander, Inc. v. B. Dixon Evander & Assocs.*, 336 Md. 635, 645 (1994) ("[A] conspiracy cannot be made the subject of a civil action unless something is done which, without the conspiracy, would give a right of action."). Because Plaintiffs cannot sustain a conspiracy claim independent of the underlying claims, which will be dismissed, they have failed to allege sufficiently that Defendants conspired against them.

### 4.   42 U.S.C. § 1983 Claim Against Selzer (Count VI)

Plaintiffs allege that Selzer's request for a writ of execution, and the sheriff's deputies' subsequent execution, violated § 1983.   To state a claim under § 1983, a plaintiff must allege that a right secured by the Constitution or laws of the United States was violated, and that the alleged violation was committed by a person acting under the color of state law. *See West v. Atkins*, 487 U.S. 42, 48 (1988).   Selzer asserts that Plaintiffs fail to state a claim because Selzer's actions were

not taken under the color of state law and because Plaintiffs did not adequately plead the constitutionally protected rights upon which Selzer allegedly infringed. (ECF No. 11-1, at 17-18).[3]  Plaintiffs aver that Selzer "jointly engaged with state officials" and therefore acted under color of law. (ECF No. 27, at 21 (quoting *Lugar v. Edmonson Oil*, 457 U.S. 922, 941 (1982))).  Selzer contends that Plaintiffs misread the Supreme Court's holding in *Lugar*. (ECF No. 30, at 8).

"*Lugar* involved a § 1983 claim alleging the unconstitutional deprivation of property under Virginia's pre-judgment attachment statute.  In *Lugar*, the Supreme Court held that that unlawful application of the pre-judgment attachment statute did not constitute the state action required for a successful § 1983 claim." *Jones v. Poindexter*, 903 F.2d 1006, 1011 (4th Cir. 1990) (citing *Lugar*, 457 U.S. at 940).  The Supreme Court held that the plaintiff "did present a valid cause of action under § 1983 *insofar as he challenged the constitutionality of the Virginia statute*[, but] he did not insofar as he alleged only misuse or abuse of the statute." *Lugar*, 457 U.S. at 942 (emphasis added); *see also Wyatt v. Cole*,

---

[3]  Selzer's motion to dismiss also asserts that the court should abstain from deciding Plaintiffs' § 1983 claim because it was the subject of a pending counterclaim in the circuit court. (ECF No. 11-1, at 15-17).  Plaintiffs since have withdrawn voluntarily the relevant counterclaim, and Selzer concedes that its abstention argument is moot. (ECF No. 30, at 8 n.2).

504 U.S. 158, 161-62 (1992) (noting that *Lugar* allowed § 1983 liability for private parties "if the statute was constitutionally infirm). In *Poindexter*, the Fourth Circuit affirmed the district court's dismissal of a § 1983 action against a private party who attempted to collect on a state court judgment. 903 F.2d at 1011. The Fourth Circuit held that there was no viable § 1983 claim against the defendant because the plaintiff alleged that the private party defendant illegally and improperly used state statutes and processes. The Fourth Circuit also noted that a private party's "use of state process to attempt to enforce judgment" does not "rise to the level of action under color of law."

Here, Plaintiffs assert that Selzer violated their rights through the alleged improper use of a writ of execution. Plaintiffs do not contend that the Maryland laws or procedures themselves are unconstitutional or constitute a violation of federal law. Rather, the first amended complaint contains multiple allegations that Selzer and the sheriff's deputies violated applicable state statutes and rules. (*See* ECF No. 5 ¶¶ 118-119, 123-127, 132, 134). A private party's alleged "unlawful invocation of statutory procedures does not constitute action under color of state law as required for a § 1983 claim." *Keystone Builders, Inc. v. Floor Fashions of Va., Inc.*, 829 F.Supp. 181, 182 (W.D.Va. 1993) (citing *Poindexter*, 903 F.2d at

1011); *see also Martin v. Sessoms & Rogers, P.A.*, No. 5:09-CV-480-D, 2010 WL 3200015, at *5 (E.D.N.C. Aug. 12, 2010) (citing *Lugar*, 457 U.S. at 941-42; *Poindexter*, 903 F.2d at 1011) (dismissing a § 1983 claim against a private party because the complaint "has done no more than allege that [the defendant] 'misused or abused' North Carolina's statutory procedure for execution against real property"). The Fourth Circuit's interpretation of *Lugar* is directly applicable to the analysis here. Accordingly, Plaintiffs' § 1983 claims against Selzer will be dismissed.

## IV. Conclusion

For the foregoing reasons, Defendants' motions to dismiss will be granted. Plaintiffs' motion for extension of time will be denied as moot. A separate order will follow.

                              /s/
                    _____
                    DEBORAH K. CHASANOW
                    United States District Judge